No. 761 August 12, 2026 141

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CARLOS HULISSES PANIAGUA-CALDERON,
*Defendant-Appellant.*

Lincoln County Circuit Court
24CR46645; A186332

Joseph C. Allison, Judge pro tempore.

Submitted June 10, 2026.

Frances J. Gray filed the brief for appellant.

Dan Rayfield, Attorney General, Paul L. Smith, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII), raising two assignments of error. First, defendant challenges the trial court's grant of the state's motion to continue trial. Second, defendant challenges the trial court's denial of a motion to suppress defendant's warrantless arrest, arguing that the police lacked probable cause to support the arrest. We conclude that the trial court did not abuse its discretion in granting the motion for a continuance and did not err in denying defendant's motion to suppress. Accordingly, we affirm.

*Motion for Continuance:* "We review [a] trial court's grant of a motion for continuance for abuse of discretion." *State v. Hoffman*, 321 Or App 330, 335, 515 P3d 912, *rev den*, 370 Or 602 (2022). A trial court does not abuse its discretion if its decision is within the range of legally correct choices and produces a permissible, legally correct outcome. *Id.* at 337. "That range depends on the particular circumstances of the case and the reasons presented to the trial court." *Id.* at 335. A trial court "may, upon sufficient cause shown by the affidavit of the defendant or the statement of the district attorney, direct the trial to be postponed for a reasonable period of time." ORS 136.070. Thus, "[a] motion for a continuance to be seriously considered by the trial court should be supported by some specific showing of good cause." *State v. Cuddie*, 24 Or App 107, 110, 544 P2d 594 (1976).

The relevant procedural facts are few. Defendant was arraigned on September 9, 2024. The trial court set an initial trial date for November 6 through 8. On October 21, the state requested a continuance because it would not have defendant's blood lab results by the time of the trial date due to a backlog at the toxicology lab. At the hearing on the state's motion, the state maintained that the results would be "crucial evidence" to the state's case. The state explained that it had sent a "rush" request to the lab on October 9, but the lab had not marked the sample as "rush" until October 17. The state also confirmed that the lab had already assigned a toxicologist to analyze the blood samples, but that the toxicologist would be unable to attend the trial in-person on

the initial trial date, even if the lab was able to return the results to the state prior to that date. Defendant objected to a continuance, stating that he was ready for trial and would be prejudiced due to remaining in custody past the initial date. The trial court asked defendant if he would be willing to stipulate to remote testimony by the toxicologist for the initial trial date, and defendant declined to do so.

The trial court then granted the state's motion, finding good cause to continue "based on the fact that the lab, while being rushed, is not going to be available and the analyst [is] not available on a currently scheduled trial date of November 6th to November 8th." The court also stated that it "appreciate[d] the willingness [of the state] to allow the analyst to be available by phone to try to keep that trial date," noting that defendant was "not required to agree to [remote testimony], and with [defendant] not agreeing to that, then that's not an accommodation that the state will make." Finally, the court concluded, "I do find good cause to hold the defendant in custody past the 60 days, as the state is unable to get the results back within 60 days. The state has taken steps where the results are currently being sought."

On appeal, defendant primarily contends that the trial court's grant of a continuance past defendant's sixtieth day in custody was not a legally permissible choice because, in defendant's view, the court based its decision on defendant's "refus[al] to agree to remote testimony from the toxicologist," and that decision, in effect, asked defendant to "waive his right to an in-person confrontation with the toxicologist or forfeit his right to trial within 60 days."[1]

We disagree. The state made a specific showing of good cause in support of its motion by identifying the particular evidence that it was waiting for, the reasons why it was delayed in obtaining that evidence, and its attempts to expedite the process. *Cf. Cuddie*, 24 Or App at 110 ("We do not think that the bare statement by [the] defendant, or his counsel, that [the] defendant desired a continuance to

---

[1] Although defendant does not cite to the relevant law in his brief, we assume he is referring to a defendant's statutory right to release from custody if trial does not commence within 60 days of the defendant's arrest, barring the defendant's express consent to a continuance or a permissible extension of custody under ORS 136.295. *See* ORS 136.290(1).

produce certain unspecified evidence is sufficient."). The court weighed those considerations against defendant's concerns and concluded that the state had shown good cause for its delay in obtaining evidence and a witness that it deemed necessary for its case. Additionally, defendant cites to no authority limiting the trial court's discretion to continue a trial past the 60-day limit outlined in ORS 136.290(1), absent the defendant's consent, when the state shows good cause for the inability of a witness to testify in-person by the initial trial date and the defendant insists on their right to an in-court confrontation of that witness.[2] *See* ORS 136.295(4) (a) (in the absence of a defendant's consent to continue a trial past the 60-day limit, a court "may order an extension of custody and postponement of the date of the trial of not more than 60 additional days" if a "witness to the crime in question is unable to testify within the original 60-day period * * * upon a showing of good cause"); ORS 136.295(4) (b)(B) (defining "good cause" to include situations in which a "victim or an essential witness for either the state or the defense is unable to testify at the trial because of circumstances beyond the control of the victim or witness"). The court's decision to grant the state's motion, based on those considerations, was within the range of legally permissible discretionary choices.

*Probable Cause:* "When reviewing a denial of a motion to suppress, we are bound by the facts found by the trial court that are supported by evidence in the record." *State v. Gerety*, 286 Or App 175, 179, 399 P3d 1049, *rev den*, 362 Or 39 (2017). If the trial court did not make express findings on facts that could be decided in more than one way, we presume that the facts were decided in a manner consistent with the court's ultimate conclusion, but only if such factual findings are a necessary predicate to that conclusion. *State v. Lunacolorado*, 238 Or App 691, 696, 243 P3d 125 (2010), *rev den*, 350 Or 530 (2011).

The relevant facts are undisputed and primarily taken from the arresting officer's testimony at the

---

[2] *See* ORS 131.045(4) ("Notwithstanding subsection (2)(b) of this section, a witness in a criminal proceeding may not appear before a jury by simultaneous electronic transmission without the written consent of the parties and the agreement of the court.").

suppression hearing, which the trial court found to be credible. Oregon State Police Trooper Katsikis responded to a single vehicle rollover crash north of the beach access to Brian Booth State Park in Lincoln County. Specifically, emergency responders reported to Katsikis that "the subject had left the car, walked down to the beach, had doffed [a] red cap, and [the responders] had recovered that cap on the beach." Upon arriving at the site of the crash, Katsikis spoke with Newton, an eyewitness who was driving behind the vehicle prior to the crash. Newton reported that she had seen the vehicle driving erratically before crashing. Following the crash, Newton stopped and spoke with the one person she saw get out of the vehicle, whom she believed was the driver. Katsikis testified that Newton told him that she believed the driver was intoxicated or high "based on the driving behavior and how the driver stared blankly at her when she asked him questions and then took off onto the beach and fled the scene." She went on to describe the driver physically as a dark-skinned man around six feet tall and wearing blue jeans, a white sweatshirt, and a "red ball cap."

Katsikis also received information from Oregon State Police Trooper Graves that another witness saw a person fitting the same physical description traveling north on foot and then "into the tree line." Katsikis and Graves searched the beach and the "grassy dunes and *** trees" near the open beach but found no one. After walking about a mile north to a different beach access point, Katsikis encountered two additional people "seated in lawn chairs right where the sand road kind of breaks the grass and the seawall." Those two people asked, unprompted, if Katsikis was looking for a man in blue jeans and a white sweatshirt holding a cell phone and reported that they had seen a person of that description heading north along the beach 15 minutes earlier. Katsikis then contacted Graves asking for a truck to drive up the beach. About a mile to a mile-and-a-half further north on the beach, the troopers encountered defendant, "a male fitting the description [of the suspect] walking northbound holding a cell phone, white sweatshirt, blue jeans, tall, dark skin." Katsikis testified that there was "no one else on the beach except for another couple that were quite a ways north *** walking southbound." Katsikis

placed defendant under arrest. The arrest occurred roughly two-and-a-half miles from the site of the crash and 70 to 85 minutes after the police received a report of the crash.[3]

At trial, defendant moved to suppress the evidence resulting from his arrest, arguing that Katsikis lacked probable cause. Specifically, defendant argued that the various witnesses' testimony about defendant's physical characteristics were too generic, and each had omitted the distinctive detail that defendant had a full beard, to support Katsikis's arrest of defendant. The trial court denied the motion, concluding that Katsikis had a subjective belief that defendant had committed the crime of reckless driving, and that that belief was objectively reasonable under the circumstances. The court acknowledged that the witnesses' generic physical descriptions of defendant may be insufficient under different circumstances to support probable cause to arrest. However, the court nevertheless concluded that the additional facts that Katsikis was aware of—including that multiple witnesses had seen the suspect moving north along the beach and that the beach was practically empty at the time of the search and arrest—were sufficient in conjunction with the multiple consistent descriptions of defendant's physical appearance to make Katsikis's subjective belief that defendant had committed the crime objectively reasonable. Defendant appeals, raising the same arguments from below and challenging only the trial court's conclusion on the existence of objective probable cause.

We review a trial court's ruling on a motion to suppress for errors of law. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009). "Whether probable cause exists to support an arrest is a question of law, not fact." *Id.* Probable cause to arrest exists when (1) a law enforcement officer subjectively believes that it is more likely than not that the person has committed a crime, and (2) the officer's belief is objectively reasonable under the circumstances. *State v. Keller*, 280 Or App 249, 253, 380 P3d 1144 (2016) (state constitutional standard); *Devenpeck v. Alford*, 543 US 146, 152, 125 S Ct 588, 160 L Ed 2d 537 (2004) (under the federal

---

[3] Police received a call reporting the crash at around 2:48 p.m., and Katsikis encountered and arrested defendant around 4:00 to 4:10 p.m.

constitution, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest"). "To determine whether objective probable cause exists, we consider the totality of the circumstances presented to the officer and reasonable inferences that may be drawn from those circumstances; no single factor is dispositive." *Keller*, 280 Or App at 253 (internal quotation marks omitted).

We appreciate defendant's argument that a generic physical description of a suspect and an arrest that occurs far in spatial and temporal distance[4] from the crime scene are facts that, at least in isolation, can be insufficient to support objective probable cause. *See State v Medinger*, 235 Or App 88, 94-95, 230 P3d 76 (2010) ("The description of [the] defendant [as wearing a gray hooded sweatshirt] was generic, and [the] defendant's presence one-third of a mile from the crime scene cannot give rise to probable cause by itself, even if he was the only person seen within one-third of a mile of the crime scene."); *State v. Gressel*, 276 Or 333, 335, 338, 554 P2d 1014 (1976) (concluding that the description of the suspected burglar as being a "white male adult wearing a dark hip-length jacket" was "so general that it would fit the vast majority of men out on a May night in Oregon").

However, here, the totality of the circumstances supports the court's conclusion that Katsikis had objective probable cause to arrest defendant. The physical descriptions, although generic, came from multiple witnesses and

---

[4] Defendant argues that "[e]ncountering someone a few minutes after a crime occurred is the type of proximity fact that is inherently significant" to the probable cause analysis, and the fact that defendant was arrested over an hour after the crash and at a location approximately two and a half miles from the site of the crash does not support objective probable cause in this case. However, defendant does not cite to any case law suggesting that an arrest that occurs further in space and time from the crime scene is dispositive to the analysis when it is possible that the defendant could have traveled to the location of the arrest in the relative time frame. *See Vasquez-Villagomez*, 346 Or at 20, 26-27 (concluding that the totality of the circumstances supported objective probable cause to arrest defendants despite the arrest happening four days after one of the murders occurred and in a different city from that murder); *State v. Gressel*, 276 Or 333, 338, 554 P2d 1014 (1976) (concluding that the fact that the "defendant was a long way from the burglary, which had been reported less than ten minutes earlier, almost immediately after its happening" discounted other facts supporting probable cause).

consistently identified the suspect's items of clothing, skin tone, and gender, and Katsikis testified that defendant matched the witnesses' descriptions of the suspect upon arrest. *See Vasquez-Villagomez*, 346 Or at 26 (acknowledging that although a witness's descriptions of the murder suspects, which included descriptors of their height, weight, race, gender, age, and haircut, might be too generic on their own to support objective probable cause, the fact that there were "reported similarities between [the witness's] descriptions and defendants' appearances, coupled with the uniting effect of the series of corroborating circumstances[,]" which included facts developed in the course of the ongoing murder investigations, was sufficient to support objective probable cause); *cf. Medinger*, 235 Or App at 95 ("Here, the description of [the] defendant—a person wearing a gray hooded sweatshirt and viewed from the rear by a person not wearing his glasses—is more generic than the description in *Vasquez-Villagomez*, where the description included the defendants' race, gender, age, weight, and height."). The fact that defendant had a full beard at the time of his arrest, and that none of the witnesses mentioned the beard in their physical descriptions, is not dispositive here in light of the totality of circumstances surrounding defendant's arrest and in the absence of any express statement from a witness that the suspect did not have facial hair. *See Vasquez-Villagomez*, 346 Or at 24 (the fact that the witness reported that the two suspects did not have facial hair, and the defendants had some facial hair at the time of their arrest four days later, was "only one fact considered in the totality of the circumstances" and therefore not dispositive).

Beyond the consistent physical descriptions of the suspect, three of the witnesses reported seeing the suspect walking northbound along the beach, away from the crime scene, and Katsikis found defendant walking northbound along the empty beach. *Cf. Medinger*, 235 Or App at 96 ("Although [the] defendant was the only person the officers saw in the vicinity of the [crime scene], that circumstance provides limited help because the officers were responding to a report that the suspect was walking north on Riverside, but [the arresting officer] encountered [the] defendant walking south on Riverside."). The multiple, consistent, and

progressive descriptions of defendant's physical appearance, combined with Katsikis's knowledge of the fact that the suspect was heading north away from the crime scene along an otherwise nearly empty beach, are sufficient to conclude that Katsikis's subjective belief that defendant had committed the crime of reckless driving was objectively reasonable. Thus, the trial court correctly denied defendant's motion to suppress evidence resulting from his arrest.

Affirmed.